## FORWARD vs. ADAMS.

*Slander* will not lie for words spoken of a person in the discharge of *official duties*, if the office has *ceased* at the time of the speaking of the words.

DEMURRER to declaration. The action is slander. The declaration, after stating by way of inducement that on the 23d May, 1826, the plaintiff was appointed by the president of the United States a *commissioner* on the part and behalf of the United States, as the general protector of the Indian tribes, to attend a *treaty* to be held between the proprietors of the pre-emption right to certain lands held by Indians in the state of New-York, and those Indians under the sanction of the government of the United States, for the extinguishment of

the right of the Indians to the occupancy of such lands, with instructions to exercise a sound discretion in the business, and if satisfied of the fairness of the propositions of the proprietors, to afford them such co-operation in effecting the object of the treaty as he might judge proper: and that having accepted the appointment, the plaintiff, on the 31st August, 1826, attended a treaty at Buffalo, and being satisfied of the fairness of the propositions of the proprietors, he sanctioned, approved and recommended a treaty there made between the Indians and proprietors for the extinguishment of the right of the Indians to the occupancy of the lands, the subject of the treaty; charges the defendant with uttering, in a discourse had on the 1st June, 1828, of and concerning the plaintiff, and of and concerning his conduct as such commissioner, and in relation to the treaty which had been concluded, the following words, alleged to be false, scandalous and defamatory, viz. "He *bribed* some of the Indians to sign the treaty; he *hired* some of the Indians to sign the treaty; he was *guilty of hiring or bribing* some of the Indians to sign the treaty; he was *dishonest* with the Indians;" *innuendo*, that the plaintiff had misdemeaned himself in his appointment, had perverted his office, and corruptly exercised his influence with the Indians, by means of bribery and corruption. The defendant demurred.

*S. A. Foot*, for defendant. The words laid in the declaration do not impute an indictable offence. Had the plaintiff been guilty of the offences charged upon him, he could not have been subjected to a criminal punishment. Acting under the authority of the general government, he was responsible only to that government, which has no statutes prescribing punishments in cases of this kind, and it appears to be conceded, has no general common law criminal jurisdiction. Sergant's Const. Law, 262 to 265. 1 Kent's Comm. 311 to 322. Again; the words do not necessarily import the charge of having acted *corruptly*; the plaintiff may have *hired* or *bribed* the Indians to treat in relation to the yielding of the occupancy of their lands, by means of *presents*—the ordinary and inseparable attendant upon negotiations with these peo-

ple. In one set of words, indeed, he is charged with having been dishonest with the Indians: this implies moral guilt, and a dereliction of duty, but the charge is too general, vague and indefinite to be supported as the subject of an action of slander. The conclusive objection to the action is, that the words were spoken of the plaintiff in reference to his office or appointment as commissioner, which had ceased long before the speaking of the words. Words spoken of one in relation to his office are actionable, because they render the tenure of his office precarious. Starkie on Slander, 104, 5. 1 Ventr. 50. 3 Wils. 188. Here the office had ceased; the object for which it was created had been effected nearly two years before the alleged injury.

*J. L. Wendell,* for the plaintiff. The action of *slander* is the remedy furnished by law for injuries to reputation. In *Baker* v. *Pierce*, Holt, 654, 6 Mod. 24, Ch. J. Holt said, that whenever words tended to take away a man's reputation, he would encourage actions for them, because, by so doing, he would contribute to the preservation of the peace. In *Button* v. *Heyward*, 8 Mod. 24, Fortescue, J. observed: " It was the rule of Holt, Ch. J. to make words actionable whenever they sound to the disreputation of the person of whom they were spoken, and this was also Hale's and Twisden's rule, and I think it is a very good rule." This in early times, was the rule as well in relation to *verbal* as *written* slander ; it is so still as to the latter, and why not as to the former ? The reasons for the distinction in holding one species of slander actionable, and the other not, will not bear the test of examination. The action is for an injury to the reputation ; whenever therefore the speaking of the words cannot be justified, and special damage ensues, or damage is the natural consequence of the speaking of the words, the action lies. To charge a public officer with a prostitution of his office, with bribery and corruption, is actionable ; but if the public functionary has ceased to hold the office in the fulfilment of the duties of which he is charged with having disgraced himself, it is said the words are not actionable. Why not ? They formerly were so. In 2 Ventr. 366, it is said, " that where a man had

been in an office of trust, to say he behaved himself corruptly in it, was actionable, as it imported great scandal, so it might prevent his coming into that or the like office again;" so in Yelverton, 153, it was held actionable to say of another, " when thou wert a justice, thou wert a bribing justice." These cases, it is believed, have never been overruled. Ch. J. De Grey, in *Onslow* v. *Horne*, 3 Wils. 188, speaking of the case in Ventris, said : "*I think the chief justice went too far ;*" but he assigned no reason for differing with his predecessor, and from a remark in *Onslow* v. *Horne*, it would seem that he himself would have held the words in that case actionable, had they related to the plaintiff's past conduct in parliament. The actionable quality of words spoken of a person *in office* does not depend upon the apprehended loss of *emoluments*, for the action lies for words affecting a person in a merely *confidential* and *honorary* office. Starkie on Slander, 100, 101. The words in this case necessarily impute official misconduct ; the plaintiff is charged with having *bribed* or *hired* the Indians to make the treaty, and with being *dishonest* towards them. Is not this the language of reproach? The answer to the objection that the words in this case do not impute an indictable offence, is, that words other than those which impute such offence are actionable, and the basis upon which this declaration is hoped to be sustained is for an injury to reputation—for damage, which the law will imply as the natural consequence of speaking such words as are charged to have been spoken by the defendant in this case.

*By the Court*, Sutherland, J. The demurrer is well taken. It is conceded that the words do not impute an indictable offence ; if true, the plaintiff would not be subjected by them to a criminal prosecution. The offence, if any, was an offence against the United States, and it is not shown that they have any statute applicable to the case ; and the better opinion seems to be, that the court of the United States have no general common law criminal jurisdiction. 7 Cranch, 32. 2 Dall. 384, Opinion of Chief Justice Marshall in Burr's Trial. 1 Gall. 488. 1 Wheat. 415. Dissertation on the Nature and Extent of the Jurisdiction of the Courts of the United States,

Forward
v.
Adams.

by Mr. Du Ponceau. 1 Kent's Comm. 311, 20. Sergt. Const. Law, 262, 5.

The action is put distinctly on the ground that the words were spoken of the plaintiff as a public officer, and tended to his injury and disparagement in that character. The fatal objection to the action on this ground is, that it appears on the face of the declaration that the plaintiff was not in office when the words were spoken; but that the office itself being a special trust, and temporary in its nature, had expired about two years before the uttering of the slanderous words. In *Sir Lionel Walden* v. *Mitchell*, 2 Ventr. 265, the following dictum is imputed to the chief justice: "That where a man *had* been in an office of trust, to say that he behaved himself corruptly in it, as it imported great scandal, *so it might prevent his coming into that, or the like office again, and therefore was actionable.*" The observation was not called for by the case, as the action was sustained on an entirely different ground. Also, in Yelverton, 153, it appears to have been held that an action could be maintained for the words, "*When thou wert a justice thou wert a bribing justice,*" for the same reason assigned in Ventris. Ch. J. De Grey, in delivering the opinion of the court in *Onslow* v. *Horne*, 3 Wils. 188, said: "I know of no case where an action for words was ever grounded upon eventual damages which may possibly happen to a man in a future situation, notwithstanding what the chief justice throws out in 2 Ventr. 266. I think the chief justice went too far." The authority of Chief Justice De Grey effectually disposes of these cases. But he is also supported by many analogous decisions. Thus, where an action is brought for words, (not actionable in themselves,) spoken of a person in a particular calling, or profession or employment, it must appear that he followed such profession or employment when the words were spoken. In *Gibbs* v. *Price*, Styles' R. 231, the judgment was arrested because it was not averred that the plaintiff was a barrister at the time of the bringing of his action, the words having been spoken of him in his professional character. And in Carye's case, Popham, 207, the words were spoken of the plaintiff as a counsellor of law; and it was said by Jones, justice, that it was not sufficient for the plaintiff to aver that he was *eruditus*

*in lege,* but he ought to say that he was *homo cinciliarius.* He must shew that he sustained the special character in relation to which the words were uttered. In *King* v. *Lake,* 2 Ventris, 28, (which was also a case of words spoken of the plaintiff as a lawyer,) it was expressly stated that the plaintiff was bred up to the law, and practised it, and had many persons for his clients, and thereby got money and maintained his family, &c. 1 Vent. 50. Upon the strength of these and other cases, it is laid down in treatises upon this subject, that where an action is brought for words spoken of a *barrister* or *physician,* it must appear that he practised as such at the time the words were spoken; for otherwise, the words could not have affected him professionally. Starkie on Slander, 105. Bacon's Abr. tit. Slander, 212, 13, 14, 15. So, if an action be brought for publishing words of a *tradesman,* concerning his trade, it must be ' averred that at the time of publishing them he was in trade; for if he were not at that time in trade, his credit could not be hurt by the words. *Collins* v. *Malin,* Croke's Ch. 382. Croke Eliz. 273. Croke J. 222. These cases all admit this principle, for although the court in some of them refused to arrest the judgment, it was upon the ground, that after verdict they would intend, from the general averment, (that the plaintiff had, for a long time preceding the day on which the words were laid, exercised the trade) that he continued to exercise on the day the words were published.

The ground of action in these cases is, that the party is disgraced, or injured in his *profession* or *trade,* or exposed to the hazard of losing *his office,* in consequence of the slanderous words; not that his general reputation and standing in the community are affected by them. It will be recollected that the words spoken, in this class of cases, are not actionable of themselves, but that they become so in consequence of the special character of the party of whom they are spoken. The fact of his sustaining that special character, therefore, lies at the very foundation of the action. On this ground, therefore, the declaration is bad.

It may be qestionable also, whether the words necessarily convey a charge of official misconduct. The terms *bribing* and *hiring* the Indians to sign the treaty, are evidently synony-

mous, and were intended to convey the same idea : and if the treaty which they were by these means induced to sign, was a fair and and advantageous one for them, it may not have been a violation of the official duty of the plaintiff, (when the peculiar character of the Indians is considered,) to have resorted to presents, or pecuniary inducements, to procure their assent to it. It is unnecessary, however, to express any opinion upon this point.

Judgment for defendant upon demurrer.